## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| KEITH MILLER, individually and on behalf of all other similarly situated individuals, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. 1:13-cv-2403-SCJ |
| FLEETCOR TECHNOLOGIES OPERATING COMPANY, LLC, | § § | |
| Defendant. | § § | |

## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR DECERTIFICATION

# TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………...………...…ii

I.   INTRODUCTION……………………………………….…………..1

II.  LAW AND ARGUMENT……………………………..……..1

    A.   Plaintiffs Cannot Prove Liability on a Class-Wide Basis…………..…..1

    B.   Plaintiffs Concede the Existence of Numerous Distinctions Among Plaintiffs, Which Distinctions Directly Impact Liability Determinations………………………………………...5

        1.   Inbound and Outbound Sales Representatives Distinctions……………………………………………5

        2.   Different Managers……………………………………7

        3.   Varying Time Periods of Employment………………………...9

    C.   Representative Testimony Is Not Suitable In Light of the Numerous and Significant Factual Differences Impacting Liability and Damages……………………………………11

    D.   Plaintiffs Failed to Offer a Workable Trial Plan…………………15

PD.16114845.2

## I.    **INTRODUCTION**

FleetCor respectfully submits this reply memorandum in support of its Motion for Decertification.[1]

## II.    **LAW AND ARGUMENT**

### A.    **Plaintiffs Cannot Prove Liability on a Class-Wide Basis.**

In an effort to manufacture similarity where none exists, Plaintiffs mischaracterize testimony of Plaintiffs and FleetCor representatives, as well as other evidence. For instance, seemingly recognizing the impact of this Court's decision in *Rindfleisch v. Gentiva Health Services, Inc.,* 2014 WL 2002834 (N.D. Ga. April 18, 2014) (Jones, J.), Plaintiffs incorrectly minimize the number of Plaintiffs who FleetCor contends lack viable claims for overtime damages. In their Opposition, Plaintiffs admit for the first time that Sandra Siddell is not a proper member of this collective action and that Tara Gray has no viable claim for overtime damages, and agree to dismiss them. (Opp., p. 4 n.1) However, Plaintiffs then springboard to a flawed conclusion that all remaining Plaintiffs have viable

---

[1] Plaintiffs suggest FleetCor engaged in misleading tactics in connection with the requested stay and anticipated mediation. However, FleetCor immediately notified Plaintiffs of the need to cancel the mediation as soon as it became aware of the circumstances necessitating cancellation. FleetCor paid all costs associated with the cancelled mediation. FleetCor also agreed to join Plaintiffs in a motion to re-open class discovery before the decertification motion deadline.

claims.  As set forth in FleetCor's original memorandum, common evidence shows that numerous other Plaintiffs lack viable claims.

As an example, Janice Gardner worked for FleetCor for only **one** day; thus, she could not have worked overtime hours. (Citarella Decl. ¶ 18)  Stacey Green also has no viable claim for overtime damages because she did not opt into this lawsuit until more than three years after her employment ended. (Citarella Decl. ¶ 19; Doc. 105)  As another example, Kenneth Williams' sworn discovery responses show he did not work more than 40 hours a week during the relevant period. (Exh. 7, pp. 424-25; Citarella Decl. ¶ 20; Doc. 25).  Keith Miller testified that some of the other Outbound Sales Representatives may not have worked over 40 hours in a week (and that some even left work **early**).  (Miller 111, 113)

Plaintiffs broadly state that "[t]he testimony, which consists of interrogatory responses from 76 Plaintiffs and depositions of two Plaintiffs and **Defendant's corporate designee**, establishes that all Plaintiffs worked overtime hours . . . ." (Opp., p. 2 (emphasis added))  This, too, is incorrect.  The testimony of "Defendant's corporate designee," Paul Citarella, is clear that the Inbound and Outbound Sales Representative positions are "40-hour-a-week" jobs, and the Inbound and Outbound Sales Representatives predominately worked 40 hours or less per week. (Citarella 124, 149; *see also* Citarella Decl. ¶ 14)

Moreover, Kimberley Coleman and Lester Rivera, who were former sales representatives, testified it was not necessary to work overtime in order to complete their job duties, nor did they work overtime (unless they inadvertently worked a very small amount). (Coleman Decl. ¶ 3; Rivera Decl. ¶ 3)  The Inbound and Outbound Sales Representatives were aware that they were expected to complete their job duties within a 40-hour workweek and were specifically instructed on more than one occasion to "[w]ork 40 hours per week," and **not** to work extra hours without pre-approval from their manager. (Citarella 134-35; Citarella Exhs. 4 & 8)  Accordingly, whether a particular Plaintiff (or manager) violated FleetCor's policy in this regard and whether a particular Plaintiff worked overtime hours is a fact-specific inquiry, which must be determined on a case-by-case basis for each Plaintiff, thereby rendering it impossible to try this case as a collective action.[2]

Plaintiffs also wrongly suggest that FleetCor's challenges to Plaintiffs' claims are limited to the examples outlined in its original memorandum and "can

---

[2] The examples provided in the original memorandum and here are illustrative. FleetCor did not endeavor to factually disprove the particular claims of each and every Plaintiff.  Such proof is not required for decertification.  FleetCor need only demonstrate that Plaintiffs cannot meet their burden of showing that liability can be proven on a **class-wide basis**, which it has done.

PD.16114845.2

easily be determined by the Court on a motion to dismiss or a motion for summary judgment." (Opp., p. 33 n.19)[3]   However, like with the plaintiffs in *Rindfleisch*, FleetCor challenges the claims of all Plaintiffs and has demonstrated that common evidence shows it is undisputed that **at least some** Plaintiffs lack legally viable claims.   This Court held in *Rindfleisch* that "as a general rule, a group of opt-in plaintiffs cannot be similarly situated for purposes of a collective action . . . " "when actual liability cannot be established on a class-wide basis."   *Rindfleish*, 2014 WL 2002834, at *5.   Thus, decertification is warranted even if some (or even most) of Plaintiffs' individual claims prove to be meritorious because it "would be a miscarriage of justice" for FleetCor to "pay overtime wages to a subset of Plaintiffs who are not actually owed any overtime damages," and it would be "improper" for such Plaintiffs to receive such damages. *See Rindfleisch*, 2014 WL 2002834, at *6.   This principle applies whether the opt-in class includes 80 members or 8,000 members.

---

[3] This argument suggests that FleetCor admits liability as to all other so-called "eligible" Plaintiffs.  To that end, Plaintiffs' characterization of certain Plaintiffs as being "eligible" or "ineligible" for overtime claims is misleading.   Of course, FleetCor contests all Plaintiffs' claims, and deserves the due process right of defending the claims of each Plaintiff on an individual basis (through cross-examination, manager testimony, time and pay records, badge swipe records, call-logs, and other relevant information).

**B.**   **Plaintiffs Concede the Existence of Numerous Distinctions Among Plaintiffs, Which Distinctions Directly Impact Liability Determinations.**

In its original memorandum, FleetCor identified numerous material differences among the Plaintiffs relating to proof of their claims and damages. Plaintiffs ignored the large majority of these distinctions, instead resorting to generalized statements to blur such distinctions.

1.   Inbound and Outbound Sales Representatives Distinctions.   Plaintiffs broadly contend that all Plaintiffs were "inside sales representatives," all were paid commissions based on the amount of fuel sold, and thus, all were similarly situated.   However, Plaintiffs fails to dispute the underlying factual distinctions between Inbound and Outbound Sales Representatives, and among the various teams within these positions, all of which affect liability and damages, including:

- Varying day-to-day job duties of Inbound and Outbound Sales Representatives, including the easier warm leads of Inbound Sales versus the "harder" cold calls of Outbound Sales and the absence of occasion for self-prospecting for Inbound Sales, all of which make it less likely (and less plausible) for Inbound Sales Representatives to have worked late or overtime. (Citarella 20-21, 64-65, 98-99; Citarella Exhs. 2-3; Citarella Decl. ¶s 4, 9; Miller 33-37, 109-110; Green 47-48, 67-70)

- Varying explanations and times for the alleged additional hours worked, including some Plaintiffs claiming they engaged in self-prospecting outside of work, some claiming they performed other tasks outside of the office, and some claiming additional hours worked only while at FleetCor's office(s). (*See* Exh. 7, pp. 131, 133, 157, 271, 273, 287, 298-99, 313, 315, 320, 322, 374, 409; Green 47-48, 61, 67-70; Miller 52, 63-64)

- Varying compensation schemes during varying time periods, with some Plaintiffs compensated on a salary basis only, others on a salary and hourly basis, and others only on an hourly basis. (Citarella 122-23; *compare* Exh. 7, pp. 31, 181, 238, 263, 329, 355, 441 (hourly basis only), *with* Exh. 7, pp. 4, 40, 75, 106, 157, 165, 197  (salary and hourly basis), *and* Exh. 7, pp. 13, 123, 337 (salary basis only))

- Varying commission schemes, consisting of different quotas and commission amounts.[4] (Miller 34-35; Citarella 115-16)

- Different Inbound and Outbound Sales Representative teams with different managers and sales goals, some with "unachievable" goals that were more likely to result in additional work hours. (Citarella 22-23, 26-35; Miller 13, 17, 39-40, 90; Green 13-18; Citarella Decl. ¶s 9-10)

- Different sales territories assigned to Outbound Sales, some in different time zones, which some Plaintiffs claim resulted in more "after hours" work. (Citarella Decl. ¶ 5; Green 49, 67; Exh. 7, pp. 49, 78, 133, 191, 365; *see* Citarella 81)

- Different physical work locations of Inbound and Outbound Sales during different time periods, with Inbound and Outbound Sales Representatives initially working in two different office buildings (until March 2012), then a single office building (for a period after March 2012), and then back to two different office buildings. (Citarella Decl. ¶8)[5]

-------------------

[4] Plaintiffs downplay the effect of the varying commission structures by contending damages can be easily calculated from Plaintiffs' payroll records. (Opp., p.20 n.11)   However, when the varying commission structures are considered in conjunction with the different compensation schemes applicable during the relevant period, it is clear the calculation of damages would be far from a "mechanical, formulaic" task.  *See Espenscheid v. DirectSat USA, LLC,* 705 F.3d 770, 773-74 (7th Cir. 2013).

[5] In support of their position that these differences are "minor", Plaintiffs fail to cite a single Eleventh Circuit case or a district court case within the Eleventh Circuit.   Plaintiffs' cited cases are also factually distinct, involving a single decision, policy or plan that would result in overtime for the entire class.   In the

2. <u>Different Managers.</u>  Plaintiffs also selectively gloss over one of the most significant distinctions among the sales representatives – they reported to numerous, different managers who administered and enforced FleetCor's overtime and reporting policies in varying ways and whose divergent practices impacted the hours worked by the employees. (Citarella Decl. ¶s 12 & 15)  Perhaps the clearest examples are the managers' different policies and practices with regard to (1) Early-Outs; (2) Lunch and Learn meetings; and (3) "make-up" opportunities for late arrivals and early departures. (Citarella Decl. ¶s 13; Coleman Decl. ¶s 6, 10-11; Rivera Decl. ¶s 7, 10-11; Miller 59-63; Green 73)

Rather than addressing these examples, Plaintiffs argue that the managers' varying practices are immaterial because all Plaintiffs "regularly worked more than forty hours per week with their managers' knowledge and were encouraged and directed by management to work overtime hours for which they were not paid." (Opp., p. 10)  However, Plaintiffs' own evidence is to the contrary.  As detailed in FleetCor's original memorandum, while some Plaintiffs claim certain managers encouraged them to work additional hours, other Plaintiffs contend these same managers did not encourage them to work additional hours. (*E.g.,* Exh. 7, pp. 131,

---

instant case, Plaintiffs' claims arise from varying stories of differing instructions by different managers, not a single decision, policy or plan.

133, 271, 273, 313, 315, 320, 322)  In addition, several Plaintiffs indicated in their sworn discovery responses that they were **not** encouraged or instructed to work additional hours. (*See* Responses of Joellyn Williams, Kenyatta Alexander, Kerry Patton, Tamara Echols and William Lewis)   Plaintiffs Miller and Green also testified in their depositions that no one specifically instructed them to work overtime hours. (Miller 86; Green 88)

While Plaintiffs suggest their claims are based on a uniform policy directed by Citarella, their evidence utterly fails to prove such a broad assertion.  In fact, their lengthy 6-page footnote establishes that only **three** Plaintiffs state in their interrogatory responses that Citarella encouraged them to work additional hours. (Opp., p. 11 n.10 (Responses of Charles Betts, Gwenda Travis and Ken Williams)) Plaintiffs also appear to concede in their Opposition that not all managers had knowledge of Plaintiffs allegedly working unpaid overtime, stating "Plaintiffs also testified that their supervisors and/or managers **may** have knowledge that they worked more than forty hours during one or more workweeks."  (Opp., p. 17 (emphasis added))  Without question, the varying policies and practices of the different managers negate the existence of a uniform policy or practice. *See Zulauf v. Amerisave Mortgage Corp.*, 911 F. Supp.2d 1266, 1275 (N.D. Ga. 2012) (decertifying collective action including 65 call center employees who worked on

various teams under different managers; "In the absence of a company-wide policy or practice, plaintiffs will have to demonstrate that each individual manager had actual or constructive knowledge that plaintiffs were performing off-the-clock work without proper compensation." (citations omitted)).

3.   <u>Varying Time Periods of Employment.</u>   Plaintiffs completely ignore that three distinct time periods are implicated by their claims in this action: (1) pre-June 2011 (employees classified as exempt and paid a salary; managers and employees did not submit time records); (2) June 2011 to August 2013 (employees classified as non-exempt, paid hourly, and instructed not to work any overtime hours without manager pre-approval; managers completed and submitted employee time records); and (3) post-August 2013 (employees classified as non-exempt; employees paid hourly and completed and submitted their own timesheets). (Citarella 117-18, 122-23, 128-29, 139-44, 149-50; Citarella Exhs. 6 and 8-9; Miller 73-74; Miller Exhs. 5-6; Citarella Decl. ¶ 7)   These distinct time periods directly and dramatically impact Plaintiffs' claims, including their compensation structure, and the records available evidencing time worked.

In addition to the varying timekeeping and pay practices used during the three distinct time periods, Plaintiffs, on an individualized basis, allege a varying number of overtime hours worked, and their allegations vary with the time period.

Many Plaintiffs claim overtime hours before June 2011, and fewer hours thereafter. (Exh. 7)  Some Plaintiffs claim they worked no overtime after the Fall of 2013, while others claim they continued working overtime after the Fall of 2013, and at least one Plaintiff claims he did not work overtime after the Fall of 2012. (*Compare* Miller 76-77, 81-82, 107; Exh. 7, pp. 90, 139, 148, 221, 254, 263, 279, 329, 346, 433 *with* Exh. 7, pp. 4, 22, 49, 75, 84, 181, 197, 205, 213, 246, 287, 296, 305, 320, 363, 415, 441; Exh. 7, p. 165)

These varying time periods not only refute that liability and damages can be determined on a class-wide basis, but they also refute Plaintiffs' contention that misclassification (as "exempt" from the FLSA's overtime provisions) is a class-wide issue.   Plaintiffs overlook that many of the Plaintiffs only worked for FleetCor after June 2011, so they were never classified as exempt. (*E.g.,* Exh. 7, pp. 31, 181, 238, 263, 329, 355, 441)  Thus, the "classification" issue applies only to certain Plaintiffs, not all.  *Cf., Dailey v. Groupon, Inc.*, 2014 WL 4379232 (N.D. Ill. Aug. 27, 2014) (denying motion for class certification where employer's method of payment and "exempt" classifications changed over time and liability

period included time periods when putative class members were classified as exempt and non-exempt).[6]

These and the other differences set forth in FleetCor's original memorandum leave no doubt that liability and damages determinations turn on Plaintiff-specific facts, such as the particular Plaintiff's position(s), job duties, compensation and commission scheme(s), their managers' practices, and their managers' knowledge of whether the particular Plaintiff worked over 40 hours in a workweek.

## C. Representative Testimony Is Not Suitable In Light of the Numerous and Significant Factual Differences Impacting Liability and Damages.

Plaintiffs cite a litany of cases in support of the general proposition that representative testimony may be used in collective actions. FleetCor agrees that representative testimony may be feasible in some collective actions. But not in **this** case. As indicated by the very cases cited by Plaintiffs, for evidence to be "representative" enough to stand in for individual testimony, the testimony of the

---

[6] Consideration of the exemption defense also requires individual analysis of Plaintiffs' job duties, especially given the material differences in the job duties of Inbound and Outbound Sales Representatives. *See, e.g., Knott v. Dollar Tree Stores, Inc.*, 897 F. Supp. 2d 1230, 1240 (N.D. Ala. 2012) (finding that exemption defense was individualized, despite defendant's across-the-board application of exemption); *Richter v. Dolgencorp, Inc.*, 2012 WL 5289511, at *8 (N.D. Ala. Oct. 22, 2012) (same); *Cruz v. Lawson Software, Inc.*, 764 F. Supp. 2d at 1058 (D. Minn. 2011) ("The classification process is not strong evidence when evaluating whether employees are similarly situated.").

representatives must be "fairly representational" of the testimony of non-testifying employees. *See, e.g., McLaughlin v. Ho Fat Seto,* 850 F.2d 586, 589 (9th Cir. 1988); *Donovan v. Bel-Loc Diner, Inc.,* 780 F.2d 1113, 1116 (4th Cir. 1985); *Takacs v. Hahn Automotive Corp.,* 1999 WL 33127976, *3 (S.D. Ohio Jan. 25, 1999).

In this case, one Plaintiff's situation is markedly different from another Plaintiff's and, thus, a single Plaintiff, or a small group of Plaintiffs, cannot provide "fairly representative" evidence that is applicable to all members of the collective class. *See Creely v. HCR ManorCare, Inc.,* 920 F. Supp. 2d 846, 857 (N.D. Ohio 2013). In particular, the record evidence demonstrates that, during the applicable period, Plaintiffs had different job duties, work habits, and pay structures. They worked under numerous different managers with varying policies and practices, worked on different teams, were paid according to different compensation schemes during different periods of time, and claim to have performed different types of off-the-clock work for widely varying amounts of time. *See Marshall v. Amsted Rail Co., Inc.,* 2012 WL 5499431, *10 (S.D. Ill. Nov. 13, 2012) ("Endeavoring to generalize one Plaintiff's experience using another Plaintiff's situation is an inaccurate method of assessing the validity of the Plaintiff's claims . . . [a]nd proceeding via the representative testimony method . . .

PD.16114845.2

would deprive [the employer] of a meaningful opportunity to cross-examine the opt-in Plaintiffs about their specific preshift and post-shift activities.").

Plaintiffs also argue that damages can be determined via representative evidence, but in this case Plaintiffs are not claiming similar amounts of damages such that any damages award would be susceptible to approximation among the collective class members.  Instead, Plaintiffs claim overtime hours ranging from **20 hours** per week to **30 minutes** per week. (Exh. 7, pp. 380, 205)   Individual Plaintiffs also claim varying amounts of overtime hours depending on the time period in question. (*See, e.g.,* Exh. 7)

This case is a far cry from Plaintiffs' cited cases in which the damages claimed were fairly standard across members of the collective class (not a wide range of overtime hours claimed.)   *See, e.g., Reich v. Southern New England Telecommunications Corp.,* 121 F.3d 58, 68 (2d Cir. 1997) (periods at issue were employees' lunch hours, which were predictable, daily-recurring periods of uniform and predetermined duration); *U.S. Dep't of Labor v. Cole Enterprises, Inc.,* 62 F.3d 775, 780 (6th Cir. 1995) (each plaintiff worked average of half an hour per day outside scheduled shift); *McLaughlin,* 850 F.2d at 588 (employees all worked same general hours); *Donovan,* 780 F.2d at 1115 (day and twilight employees worked 8-hour days rather than 7½ hour days).  Here, Plaintiffs' alleged

-13-

overtime hours vary greatly, and calculating Plaintiffs' damages would require intensive, individualized analyses of each Plaintiff's daily activities, rather than an extrapolation based on the experiences of others. *Dailey*, 2014 WL 4379232, at *9 ("Account Reps would have to recreate from memory the hours that they worked or estimate their overtime in ways unique to each Account Rep. And because Plaintiffs propose no alternative method of addressing these individualized issues, class certification, as in *Espenscheid*, is not appropriate."); *cf. Roach v. T.L. Cannon Corp.*, 2013 WL 1316452, *3 (N.D.N.Y. Mar. 29, 2013) (applying *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013), in denying certification of a wage and hour class action: "Because Plaintiffs have offered no model of damages susceptible of measurement across the entire . . . class, 'questions of individual damage calculations will inevitably overwhelm questions common to the class'").[7]

---

[7] Plaintiffs' argument and cited authority on the issue of individualized defenses is unpersuasive. FleetCor's defenses, such as lack of actual knowledge or constructive knowledge of overtime work claimed, set off for overpayment, estoppel, and *de minimis*, are highly individualized defenses given the facts of this particular case. This is not a case in which the defenses can be applied "across the board" as to all Plaintiffs' claims. This weighs in favor of decertification. *See Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611, 632 (S.D. Cal. 2014); *Marshall*, 2012 WL 5499431, at *10.

PD.16114845.2

## D.    Plaintiffs Failed to Offer a Workable Trial Plan.

In recognition of the case management difficulties with collective actions, the modern trend is for courts to require plaintiffs to provide a specific trial plan in order to survive a motion for decertification.  *See, e.g., Espenscheid*, 705 F.3d at 775-77 (decertifying collective action where plaintiffs failed to propose a specific and feasible plan for litigating the case on a collective basis); *Wilson v. Navika Capital Grp., LLC,* 2014 WL 2534904, at *2, 5-7 (S.D. Tex. June 4, 2014) (decertifying collective action because plaintiffs did not set forth a workable trial plan); *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 354 (N.D. Ill. 2012) (decertifying collective action where plaintiffs "fail[ed] to propose any specific trial plan"); *Camesi v. University of Pittsburgh Medical Center*, 2011 WL 6372873, *9 (W.D. Pa. Dec. 20, 2011) (decertifying collective action because plaintiffs failed to offer meaningful explanation of how individualized inquiries could be handled through representative testimony, bifurcation or subclassification).  Plaintiffs have failed to propose **any** trial plan by which this case could be tried collectively, much less a workable plan.   Because Plaintiffs have not demonstrated how this case could be tried collectively without sacrificing FleetCor's due process rights, the action should be decertified.

Respectfully submitted this 16th day of January, 2015.

**PHELPS DUNBAR LLP**
II City Plaza
400 Convention Street
Suite 1100
Post Office Box 4412
Baton Rouge, Louisiana  70802
Telephone: (225) 346-0285
Facsimile: (225) 381-9197

/s/ Susan W. Furr_____
Susan W. Furr
Louisiana Bar No. 19582
*susie.furr@phelps.com*
Jessica C. Huffman
Louisiana Bar No. 30445
*huffmanj@phelps.com*
(admitted *pro hac vice*)

**PHELPS DUNBAR LLP**
100 South Ashley Drive
Suite 1900
Tampa, Florida  33602
Telephone: (813) 472-7550
Facsimile: (813) 472-7570

Dennis M. McClelland
Florida Bar no. 0091758
*dennis.mcclelland@phelps.com*
(admitted *pro hac vice*)

Counsel for Defendant

**POLSINELLI PC**
1355 Peachtree Street, N.E.
Suite 500
Atlanta, Georgia 30309-3232
Telephone: (404) 253-6000
Facsimile: (404) 253-6060

James J. Swartz, Jr.
Georgia Bar No. 694319
*JSwartz@Polsinelli.com*
Teeka K. Harrison
Georgia Bar No. 543115
*THarrison@Polsinelli.com*

Local Counsel for Defendant

-16-

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **KEITH MILLER, individually and on behalf of all other similarly situated individuals** | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| **FLEETCOR TECHNOLOGIES OPERATING COMPANY, LLC,** | ) ) ) |
| Defendant. | |

CIVIL ACTION NO.:  **1:13-CV-2403-SCJ**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 16, 2015, I electronically filed the foregoing Defendant's Reply Memorandum in Support of Motion for Decertification with the Clerk of Court using the CM/ECF system, which will send electronic notice to the following counsel of record:

John Thomas Sparks, Sr.
Austin & Sparks, P.C.
2974 Lookout Place, N.E., Suite 200
Atlanta, GA 30305-3272
404-869-0100
Fax: 404-869-0200

Rachhana T. Srey
Tim Selander
Nichols Kaster, PLLP-MN
80 South 8th Street
4600 IDS Center
Minneapolis, MN 55402
612-256-3200
Fax: (612) 215-6870

*s*/Susan W. Furr
Counsel for Defendant

-17-

PD.16114845.2